# CHARLESTON.

CONRAD, EX'R. ETC. *v.* CROUCH *et als.*

Submitted September 9, 1909.    Decided December 13, 1910.

1. DOWER—*Action for Assignment of—Nature of Remedy—Sale of Land.*

    A widow having only a claim to dower in land, title to which has passed to infant heirs, can not have the land sold, either on the ground of insufficient personal assets to pay the debts of the estate, or on the ground that the interest of the infant heirs will be promoted by a sale.

2. SAME—*Suit by Widow on Behalf of Creditors.*

    A suit brought by a widow against the heirs for assignment of dower in lands of which the ancestor died seized, is not converted into a general creditor's suit against the estate by a decree referring the cause to a commissioner with directions to convene the creditors and ascertain the debts of the estate. A widow, having only a dower claim on land, can not bring a suit on behalf of creditors of an estate.

3. SAME—*Action for Assignment—Nature of Remedy—Sale of Land of Infant Heirs.*

    A sale of the lands of infant heirs made in such proceedings, either for the purpose of paying the debts of the estate, or on the ground that the interest of the infants will be thereby promoted, is void for want of jurisdiction.

Appeal from Circuit Court, Randolph County.

Consolidated actions by Lewis C. Conrad, administrator of Delilah Crouch, against Eli H. Crouch and others, and by Eli H. Crouch against Delia Crouch, Orris Crouch, and others. From the decree, Orris Crouch and others appeal.

*Reversed and Remanded.*

*W. B. Maxwell,* for appellants.

*Harding & Harding* and *E. A. Bowers,* for appellees Hench, Dromgold, and Shull.

WILLIAMS, JUDGE:

Appeal by Orris Crouch and others, infant heirs of H. C. Crouch, deceased, from a decree of the circuit court of Randolph county, pronounced on the 25th of November, 1908. The record shows that Jonathan Crouch died testate in June 1888, leaving a widow Delilah and a number of children. He devised to his two sons, Eli H. and H. C. Crouch, certain small tracts of land in severalty, and a larger tract, supposed to contain 1,000 acres, jointly. The devise was subject to the wife's right to dower. These two sons were made executors. In 1897 H. C. Crouch died intestate leaving four infant children, viz: Orris, Warren, Anna and Robert Crouch. His brother, Eli H., qualified as his administrator. In April, 1898, Delilah Crouch brought her suit in equity to have dower assigned to her in the lands devised to H. C. Crouch, deceased, and to recover damages for its detention. Eli H. Crouch, in his own right, and as surviving executor of Jonathan Crouch and as administrator of H. C. Crouch, deceased, and the infant heirs of H. C. Crouch were made defendants to her bill. At the same time that Delilah Crouch brought her suit for dower, Eli H. Crouch brought a suit against her and the infant children of H. C. Crouch, deceased, to have partition of the 1,000 acre tract and to have five acres allotted to him out of one of the small tracts devised to H. C. Crouch, according to the provisions of their father's will.

Commissioners were appointed by decree made in the Delilah Crouch suit on the 9th of May 1898, not only to assign dower, but also to allot to Eli H. Crouch the five acres and to partition between him and the heirs of H. C. Crouch the 1,000 acres. The

court also referred the cause to W. E. Baker, commissioner, to ascertain the damages to which Delilah Crouch was. entitled, and to settle the administration accounts of Eli H. Crouch upon the estate of H. C. Crouch, deceased, and directed the creditors of H. C. Crouch to be convened for the purpose of ascertaining the amount of his estate's indebtedness.

The commissioners appointed to assign dower and to make partition of the lands did assign dower and laid it upon lands other than the 1,000 acres, and did lay off to Eli H. Crouch the five acres, and reported their proceedings on May 9, 1899. But they did not make partition of the 1,000 acre tract.

Commissioner Baker filed his report on the 23d of January, 1899, which showed a balance of personal funds in the hands of the administrator of $865.57, and debts proven against the estate $1,030.20, and damages in favor of Delilah Crouch $55.00 per year for five years, or $275.00. He also reported that the lands of H. C. Crouch would rent for the annual sum of $165.00.

On the 30th of January, 1899, by a decree made in the Delilah Crouch suit, the report of commissioner Baker was confirmed in all respects except as to the matter of the rental value of the land. This was reserved for future order. The administrator was directed to apply the funds in his hands to the costs of suit, and the balance upon the debts *pro rata,* including the $275.00 awarded as damages to Delilah Crouch.

On May 12, 1899, the two causes were, by decree, consolidated and heard together, and the reports of the commissioners who had assigned dower and laid off the five acres to Eli H. Crouch were confirmed. There were no exceptions to any of said reports. This last named decree recommitted to commissioner Baker his report for the purpose of amendment so as to show the balance of debts which would be due from the estate of H. C. Crouch, deceased, after applying to their payment, *pro tanto,* the funds in the hands of the administrator. He reported immediately, showing that there would be a balance of unpaid debts amounting to $569.69. There was no exception to this report, and it was confirmed by the same decree, and Jared L. Wamsley was appointed a commissioner to sell the one-half interest in the 1,000 acres of land, provided the debts were not paid in sixty days. The decree of May 12, 1899, notes the filing of the answer of Eli H. Crouch to the bill of Delilah

Crouch, and also the filing of the answer of Delilah Crouch to the bill of Eli H. Crouch. Eli H. Crouch answers, both in his own right and as administrator of H. C. Crouch, deceased. The answers, by guardian *ad litem,* of the infants had been previously filed to both bills, and general replication to all of said answers.

Eli H. Crouch alleges in his answer that he is guardian for the infant children of his deceased brother H. C. Crouch and that it would be to the best interest of his wards to have their interest in said 1,000 acres sold, and a portion of the proceeds applied to the indebtedness of the estate of their father. But this answer was not made on behalf of his wards in his capacity as guardian; neither was it sworn to, or any evidence taken to prove that it would be beneficial to his wards' estate to sell this land. Hence, this suit can not be regarded, in any sense, as a proceeding under the statute, chapter 83, Code of West Virginia, to sell infants' lands.

Delilah Crouch departed this life and her suit was revived on motion of Lewis C. Conrad, her administrator, by decree made October 18, 1902. By the same decree the partition suit of Eli H. Crouch was dismissed on the ground that its purpose had been accomplished. Partition of the 1,000 acres had not then been made. The former decree of sale was modified by directing Jared L. Wamsley, commissioner, not to sell the half of the 1,000 acres of land, but instead to sell the half of the timber on it and the timber on a tract of 90 acres. This decree provided that the timber was to be "removed in five years from the date of said sale and all said timber that may be left upon said lands at the end of said period of five years to revert to and become the property of the heirs of said decedent H. C. Crouch". The timber on the small tract was sold at $5.50 per acre, and on one-half of the 1,000 acre tract at $4.00 per acre. The timber had been cut from a portion of the small tract, and the exact area of the larger tract was not then known. Consequently, the sale of both tracts was made according to the supposed number of acres of each, and the amount of purchase money thus ascertained to be $2,400.00, one-third of which was paid in cash, and two notes for $800.00 each executed by S. N. Hench, W. A. Dromgold and S. E. Shull, the purchasers, for

the balance. This sale was confirmed by decree made on the 27th of January, 1903.

The contract of sale, and the decree confirming it, provided that the commissioner should have the two tracts surveyed, and the amount of purchase money was to be increased, or diminished, according to the acreage. The court reserved all questions concerning the ascertainment of the amount of purchase money, "until said survey shall have been made as directed and agreed to under the said contract filed with said report of said Special Commissioner". Commissioner Wamsley failed to have the surveys made, and on December 5, 1907, and July 7, 1908, Hench, Dromgold and Shull, the purchasers, filed two petitions, praying that surveys be made, and the amount of the purchase money ascertained, and that the time be extended within which they could remove the timber. They did not, however, pray for a partition of the 1,000 acre tract. Even if it be assumed that the sale was valid, a partition of the 1,000 acres seems not to have been necessary in order to ascertain any of the rights of these purchasers. Because they allege in their petition that they had purchased from Eli H. Crouch his share of the timber on said 1,000 acres, and exhibited a copy of the deed from him and wife to them, bearing date on the 10th of February, 1903, conveying to them the timber on certain small tracts of land, "and the one-half of the timber on another tract of land of 1,500 acres situate in the District of Huttonsville in the county of Randolph, West Virginia". This is the same tract which was supposed to contain only 1,000 acres. By the terms of this deed the purchasers are given eight years from its date to cut and remove the timber. The price paid to Eli H. Crouch for his half interest in the timber on all of the tract was $2.00 per acre. This is clearly a deed for Eli H. Crouch's *undivided half* of all the timber on the tract. Their petitions also allege that they purchased from Commissioner Wamsley "the undivided half of the timber on said 1,000 acre tract of land at and for the price of $4.00 per acre, being exactly the price agreed upon between said Eli H. Crouch, guardian, and petitioners in said contract in writing". This written contract of sale is exhibited with the petition, bears date October 4, 1902, and is made on behalf of Eli H. Crouch for himself "and as guardian for the heirs of H. C. Crouch, deceased". It is an agreement to sell the

timber on a number of tracts of land, including the 1,000 acre
.tract, the timber on which was sold at the price of $4.00 per acre,
and was made subject to confirmation by the court.   It thus
appears, not only that petitioners thought they were buying from
Wamsley, the commissioner, the *unidivided half* of the timber
on the 1,000 acres, but also that they had already purchased the
other *undivided half* of the timber on said tract from Eli H.
Crouch.   Consequently, it was not necessary to partition the
timber in order to ascertain any of the rights of the purchasers.
At the time of filing their petitions, Hench, Dromgold and Shull
claimed to be the owners of all the timber on the tract, and it was,
therefore, only necessary to ascertain the whole acreage in order
to determine the amount of the purchase money.   But the real
purpose in filing the petitions appears to be to get an extension
of the time in which to remove the timber.   The period of five
years, next after the confirmation of the sale, had expired before
the filing of the petitions, and no timber appears to have been
removed.

Eli H. Crouch and the children of H. C. Crouch filed written
exceptions to the petitions, which were sustained in all respects,
except as to the right of petitioners to have a survey made of
the lands.   They also answered, and the two causes were again
heard upon the new pleadings, and upon the report of A. J.
Crickard, Surveyor, A. J. Long and T. H. Ward who had previ-
ously been appointed to make survey of the two tracts of land,
and to partition the 1,000 acre tract, the court having by order
of record September 12, 1905, re-instated the cause of Eli H.
Crouch for the purpose of making partition.   On the 25th of
November, 1908, the court confirmed the reports of surveys and
partition, and decreed that Eli H. Crouch and the heirs of H.
C. Crouch, respectively, should hold in severalty 781½ acres,
described by metes and bounds and as being the one-half of
1,563 acres, that being the ascertained quantity of the 1,000
acre tract.   The court held that the sale had not in fact been
consummated, until then, and gave the purchasers five years
next thereafter to cut and remove the timber.   It is from this
decree that the infant heirs of H. C. Crouch have appealed.

Counsel for appellants insist that the decree of January 27,
1903, confirming the sale, was final and could not be modified
at a subsequent term.   On the other hand, counsel for appellees

contend that it was only an interlocutory decree, and was, therefore, subject to modification or change, and that the sale was not consummated, and could not be consummated until the amount of purchase money was ascertained, that this could not be known until a survey and partition of the land was made.

Generally speaking, a decree confirming a sale of land is final and invests the purchaser with equitable title. After confirmation the contract of sale becomes an executed contract which the purchaser had a right to have carried out, and which may be enforced against him. 8 Encyc. Dig. and numerous cases there cited. But according to the view we take of this case it is not material to determine whether this general rule is applicable to the facts in the present case, or not. It is affected by a more vital question, one which extends to the jurisdiction of the court to make sale of the infants' lands (timber) upon the pleadings, in either of these suits. If a suit had been brought by the administrator, or by a creditor of H. C. Crouch, deceased, there was not sufficient personal assets to pay the debts; or if to sell the lands belonging to his estate, on the ground that a suit had been brought in accordance with the provisions of chapter 83 of the Code of West Virginia, which provides a method for the sale of infant's lands, when their interest will be thereby promoted, there could have been no doubt of the court's authority to decree a sale, upon proper showing. But neither of these suits can, in any sense, be regarded either as a creditors' suit, or as a proceeding under the statute for the sale of infant's lands. Delilah Crouch brought her suit for dower, nothing else. Her only claim against the estate of H. C. Crouch, appearing in the bill, was for dower, and damages for withholding it from her. She was not a creditor, and had no right to bring a creditors' suit even if she had wished to do so. The decree which referred the cause to a commissioner and authorized a convention of the creditors, and the subsequent decree adjudicating the debts in favor of the various creditors who appeared before the commissioner and proved their debts, do not convert her bill into a creditors' suit. Such decrees could only have been properly rendered in a case properly pleaded. That a widow, having only a right to dower, can not maintain a suit to sell the lands descended to the heirs has been decided by this Court in *Hull* v. *Hull,* 26 W. Va. 1; and *Hoback* v. *Miller,*

44 W. Va. 635. The fact that Delilah Crouch is not the widow of H. C. Crouch, deceased, from whom appellants inherit, but is the widow of Jonathan Crouch who was the devisor of H. C. Crouch, does not alter the rule.

The court was likewise without authority to sell the infants' land (timber) in the partition suit. It did not appear that partition could not be made of the land, and a partition of it in kind was in fact made.

"A sale can not be decreed in a partition suit unless it appears, by report of commissioner or otherwise by the record, that partition can not be conveniently made, and also that the interests of those interested in the land or its proceeds will be promoted by a sale". *Roberts* v. *Coleman,* 37 W. Va. 143; *Casto* v. *Kintzel,* 27 W. Va. 750; *Stewart* v. *Tennant,* 52 W. Va. 559 (Syllabus Pt. 5) ; and *Zirkle* v. *McCue,* 26 Grat. 517.

The court not being warranted by the pleadings in either suit to sell the timber belonging to the heirs of H. C. Crouch, deceased, it necessarily follows that the sale to Hench, Dromgold and Shull is not merely voidable, but absolutely void.

"Where there is no pleading to warrant a decree, or part of a decree, the decree, or such part of it, is not merely voidable, but void, as it is not on a matter in issue". *Waldron* v. *Harvey,* 54 W. Va. 608 (Syllabus Pt. 2) ; *Hoback* v. *Miller, supra.*

The purchasers acquired no right to the timber belonging to appellants by such pretended sale. A purchaser at a judicial sale is bound to know of the want of jurisdiction, if such want exists. *Hoback* v. *Miller, supra; Waldron* v. *Harvey, supra.*

The appellants, however, do not complain of the decrees of November 22, 1902, and January 27, 1903, by which the sale of the timber was made and confirmed. They have appealed from two decrees, one of which was entered on July 7, 1908, overruling exceptions to the petition of Hench, Dromgold and Shull, and the other entered on November 25, 1908, extending the time to cut and remove the timber. No complaint is made of the earlier decrees. But the decrees appealed from are but modifications of such earlier decrees which we have found to be void, and it follows that they are also void.

The sale being void, the purchasers should be restored to their *status quo,* so far as it can be done without violating other rules of law and principles of equity governing the rights of

parties in such cases. *Hudgin* v. *Hudgin,* 6 Grat. 320; *Haymond* v. *Camden,* 22 W. Va. 190; *Charleston L. & C. Co.* v. *Brockmeyer,.* 23 W. Va. 635; and *Hull* v. *Hull, supra.* To what extent this can now be done, we are not advised by the record. It does not appear how much of the purchase money has been paid by Hench, Dromgold and· Shull, nor how it has been applied.

Hench, Dromgold and Shull, having purchased from Eli H. Crouch his undivided half of the timber on the 1,563 acre tract, had a right to have partition thereof made between themselves and appellants, and for this purpose only it was proper for the court to entertain their petition. There is no complaint made of the decree confirming the partition of the land, and notwithstanding it appears in the record, it is not before this Court for review.

The decree of November 25, 1908, is void in so far as it attempts to give five years time from its date for the cutting and removal of the timber belonging to these appellants, and also in so far as it purports to invest Hench, Dromgold and Shull with any right to said timber, and will be reversed, and the causes will be remanded for such further proceedings to be had therein as any of the parties thereto may be advised it is proper for them to take.

*Reversed and Remanded.*